AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 06, 2020

SEAN F. McAVOY, CLERK

| | |
|---|---|
| United States of America<br>v.<br><br>JESUS FRANCISCO GONZALEZ-GONZALEZ<br><br>*Defendant(s)* | )<br>)  Case No. 1:20-mj-04214-MKD<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __11/4/2020__ in the county of __Yakima__ in the __Eastern__ District of __Washington__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); (b)(1)(C) | Possession with intent to distribute a controlled substance, methamphetamine |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*  10/6/2020 916hrs

Osvaldo E. Suarez, Special Agent, HSI
*Printed name and title*

☑ Sworn to telephonically and signed electronically
☐ Sworn to before me and signed in my presence.

Date: 11/6/2020

*Judge's signature*

City and state: Yakima, Washington     MARY K. DIMKE, U.S. Magistrate Judge
*Printed name and title*

AUSA: RCB      COUNTY: YAKIMA

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Osvaldo E. Suarez, having been duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1. I, Osvaldo E. Suarez, am employed as a Special Agent in the United States Department of Homeland Security, Immigration and Customs Enforcement, currently assigned to Homeland Security Investigations (HSI) for the Office of the Resident Agent in Charge (RAC) in Yakima, Washington and have been so employed since September of 2003. Previously, I was employed as a Special Agent with United States Customs Service from September of 2002 to September of 2003. From 1990 to 2002, I was a Police Officer for the City of Richland, Washington, and the City of Tacoma, Washington. My training includes eighteen weeks in the Criminal Investigator Training Program and Customs Basic Enforcement School at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I have also received hundreds of hours of specialized training in the areas of narcotics trafficking, money laundering, human smuggling, human trafficking and identity and benefit fraud.

2. I have participated in criminal investigations involving drug trafficking, money laundering, document fraud and alien smuggling. This participation includes acting as the case agent, working in an undercover capacity, and assisting other law enforcement officers. Through this participation, and my training and experience, I have gained an understanding of the manner in which narcotics are smuggled into the United States, including utilizing express consignment companies and mail. In addition, I have provided investigative expertise and assistance to various agents within HSI and other law enforcement agencies in their investigations of individuals, organizations, and businesses

1

involved in customs and immigration violations as well as the trafficking of illegal aliens. As a result of this, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to smuggle narcotics and prohibited merchandise entering the country.

**COMPLAINT**

3. On 11-4-2020 HSI Yakima and Lead (Law Enforcement Against Drugs) task force conducted a controlled delivery at 905 North Avenue Sunnyside, Washington of UPS parcels tracking number 1Z090X786823462686 and 1Z090X786890132036. The parcel being delivered was believed to contain 4 to 6 kilograms of methamphetamine. In anticipation of the delivery, your affiant applied for and obtained an anticipatory search warrant, Case No. 1:20-MJ-04206-MKD. The anticipatory warrant authorized the search of 905 North Avenue, Sunnyside, Washington, 98944 upon acceptance of the above identified UPS parcel by an individual at the Subject Premises and entry of the parcel into the Subject Premises.

4. At 17:14 I arrived at the Subject Premises in an undercover capacity, I knocked on the door and was greeted by a male occupant, later identified as Jorge Oblea Luque. I told Mr. Oblea Luque that I lived in the area and that we had the same street number of home and that a nephew at my home accepted two boxes from UPS in error and the boxes had the address to this residence. Mr. Oblea Luque asked an adult female in the home did she know if they were expecting any deliveries? The female advised she did not believe so. I knew that the two that the boxes had the name of Jesus Francisco Gonzalez on them. The female advised that she recognized the name and that is their friend who lives nearby, and he had been expecting a delivery for some time now. Mr. Oblea Luque and I carried both

boxes and left them in the front living room. I then left the residence after delivering the two boxes at approximately 17:19 hours.

5. The HSI Agents and LEAD Task force officers waiting nearby stood by following entry of the parcels into the Subject Premises. While the Agents and Officers waited, a 1995 Ford Mustang arrived bearing Washington license plate BUK 2205. A lone male exited the vehicle and entered the residence through the main door to the home.

6. As authorized by the anticipatory warrant, HSI Agents and LEAD Task force officers approached the residence at 17:35 hours. Agents and Officers contacted the couple I had made contact with earlier and a male identified later as Jesus Francisco Gonzalez-Gonzalez. Special Agent (SA) Darren Pitt of the Residence Agent in Charge (RAC) HSI office, who is fluent in Spanish, advised all of the people in the residence of their constitutional rights under *Miranda*.

7. SA Pitt spoke with Gonzalez-Gonzalez, who told him that the couple in the home do not have anything to do with any of the contents in the delivered parcels and that he is solely the owner of the "Hielo" (Ice) in the residence. Gonzalez-Gonzalez told SA Pitt he rents an apartment constructed in the home for $600 per month. SA Pitt advised me that Gonzalez-Gonzalez told him that in the Subject Apartment located in the Subject Premises, within a "mochila" (back pack), is approximately eight pounds of "Hielo" SA Pitt specifically asked Gonzalez-Gonzalez what was "Hielo", Gonzalez-Gonzalez advised that it was "Crystal" and that it is an illegal drug. Gonzalez-Gonzalez told Agent Pitt that he had received the 8 pounds of Hielo 3 to 4 days prior from an unknown man at a gas station. Gonzalez-Gonzalez provided no further details of the transaction.

8. SA Anthony Tillet of the Yakima RAC office looked into the 1995 Ford Mustang bearing Washington license plate BUK 2205 in which Gonzalez-Gonzalez had arrived to the location and observed, visible through the window from the exterior of the vehicle, what he recognized to be a glass methamphetamine smoking pipe.

9. Based on the statements made by Gonzalez-Gonzalez to SA Pitt, your affiant obtained a search warrant for Gonzalez-Gonzalez's apartment located with 905 North Avenue, Sunnyside, Washington; Case No. 1:20-mj-04207-MKD.

10. Agents executed the search warrant at 21:55 hours. Inside the apartment, agents located and seized the following:

    a. 1 baggie of a white crystalline substance located on a nightstand

    b. 7 bags of crystalline substance located behind a child-sized bed

    c. Plastic baggies on the floor

11. The items were taken back to HSI's Yakima office and tested for the presence of methamphetamine; and tested presumptively positive. The total weight of the packaging and substance was 3,778.99 grams.

12. The UPS parcels delivered during the controlled delivery was also seized and inspected. Two metal canisters were located inside two heating and cooling units within the parcels. Within each black canister was plastic wrapping containing a crystalline substance. This crystalline substance also tested presumptively positive as methamphetamine. The total weight of the crystalline substance and plastic wrapping seized from the parcels was 2,375.69 grams. The aggregate amount of suspected methamphetamine seized (including plastic packaging) was 6,154.68.

13. The crystalline substance seized from Gonzalez-Gonzalez's apartment and the UPS parcels that he claimed as his was sent to the Drug Enforcement Agency Western Laboratory.

14. Based on my training and experience in the field of narcotics suppression and investigations, I know that 6,154.68 grams of methamphetamine is well above what a typical user of methamphetamine retains for personal use, and that such large quantities are indicative of an intent to divide, package and resell them.

## CONCLUSION

15.  Based on the statements by Gonzalez-Gonzalez to SA Pitt and the large amount of methamphetamine recovered during a search of Gonzalez-Gonzalez's apartment, as well as the large quantity recovered from the UPS parcel claimed by Gonzalez-Gonzalez, I believe that on or about November 4, 2020, Jesus Francisco Gonzalez-Gonzalez, in the Eastern District of Washington, did commit a violation of 21 U.S.C. § 841(a)(1); (b)(1)(C) in that he possessed with intent to distribute and dispense a controlled substance, to wit: methamphetamine.

## REQUEST FOR SEALING

16. I further request that the Court order that all papers in support of this application, including the affidavit and complaint, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

*Osvaldo E. Suarez*
Osvaldo E. Suarez, Special Agent
Homeland Security Investigations

SUBSCRIBED electronically and sworn to telephonically this 6th day of November 2020.

*M. K. Dimke*
Hon. Mary K. Dimke
United States Magistrate Judge